Penny L. Koepke
pkoepke@hoalaw.biz
**MAXWELL & MORGAN, P.C.**
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Candy Workman, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CarGuard Administration, Inc., an Arizona corporation,<br><br>*Defendant*. | Case No. 2:23-cv-00961-DLR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. Douglas L. Rayes |

## I.   INTRODUCTION

This case challenges Defendant CarGuard Administration, Inc.'s ("Defendant" or "CarGuard") serial practice of placing (or having others place on its behalf) unsolicited prerecorded telemarketing calls to consumers in violation of 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act"). In search of an early exit, CarGuard seeks dismissal on the pleadings, arguing that the Complaint doesn't sufficiently allege that it directly placed the calls at issue or that it can be held vicariously liable for the calls. Fortunately for Plaintiff and the class members harmed by CarGuard's conduct, its Motion lacks merit and should be denied.

CarGuard first claims that Plaintiff failed to allege sufficient facts to support a claim for direct liability. This argument largely ignores the Complaint, which specifically alleges

1

that CarGuard itself placed the offending calls to Workman and the Class. (FAC ¶¶ 3, 14, 22, 31, 41-42.) In support, Plaintiff alleges that the calls specifically solicited Workman to purchase CarGuard's auto warranties. (*Id.* ¶¶ 26-29.) Indeed, a CarGuard warranty application/contract was emailed to Workman while she was on the call and the caller solicited her to purchase said warranty. (*Id.* ¶ 28, Ex. A.) Together, the facts sufficiently allege a TCPA claim against CarGuard based on direct liability. Because Rule 8 specifically permits parties to allege alternative theories and the pleading is sufficient if either is sufficient, the motion should be denied on the direct liability allegations alone.

But ultimately this is of no consequence because Plaintiff also sufficiently alleges an alternative vicarious liability theory. That is, Plaintiff alleges sufficient facts under which CarGuard can be held vicariously liable for the calls at issue under theories of actual authority, apparent authority, or ratification. While CarGuard attempts to minimize the complaint's allegations, the reality is that Workman has alleged substantial control and involvement that CarGuard exercises over its third-party agents' telemarketing practices. It authorized the calls to be made to consumers, such as Workman, and it authorized the callers to utilize its name and logo when soliciting potential clients and represent that the callers had the power to execute contracts on its behalf. CarGuard's motion also overlooks its ratification of the calls at issue. Indeed, it had knowledge of the telemarketing abuses inflicted on consumers by its agents, and nevertheless continued to accept all of the benefits of the unlawful calls.

Ultimately, the calls were undoubtedly placed (either directly or indirectly) to sell CarGuard products. Accordingly, and as explained more fully below, the Court should deny Defendant's Motion to Dismiss and allow the case to proceed to discovery.

## II. STATEMENT OF FACTS

Defendant CarGuard is a company that offers and administers extended car warranties. (FAC ¶ 10.) To recruit new customers, CarGuard has turned to unlawful telemarketing. (*Id.* ¶ 11.) That is, CarGuard (or someone acting on its behalf) placed prerecorded telemarketing calls to Plaintiff and the class members. (*Id.* ¶¶ 14-15.)

In Plaintiff Workman's case, she has no relationship with CarGuard and has never consented to receive any calls from CarGuard. (*Id.* ¶¶ 30, 44.) Nevertheless, CarGuard (or a third-party acting on its behalf) placed a prerecorded telemarketing call to her to solicit her to purchase its car warranty. (*Id.* ¶ 24, 41.) That is, on July 14, 2020, she received a telephone call directed to the cellular telephone number from CarGuard. (*Id.* ¶ 24.) Upon answering the call, Workman was greeted by a pre-recorded message concerning a car warranty that was supposedly about to expire. (*Id.*) To ascertain the reason for the call, Workman followed the pre-recorded prompts and was connected to a live person who identified herself as "Ina." (*Id.* ¶ 25.) Ina then transferred Workman to another telemarketing agent named Julian Castro, who then solicited Workman to purchase an extended car warranty using high pressure sales tactics. (*Id.* ¶ 26.) During the call, Castro requested Workman's email address, which she provided. (*Id.* ¶ 27.) After providing her email address, Workman received an email from Castro while still on the call with an application form for the extended car warranty, or vehicle service contact. (*Id.* ¶¶ 27-28; Ex. A.) The application made clear that the policy would be administered by CarGuard and the contract for service would be between Workman and CarGuard. (*Id.* ¶ 28.) The application also included CarGuard's logo. (*Id.* Ex. A.) Thus, the call was placed to sell a CarGuard product.

To the extent that an agent of CarGuard made the calls, the calls were made on CarGuard's behalf and for its benefit. (*Id.* ¶ 16.) CarGuard knew about the calls, received the benefits of the calls, directed the calls to be made, and ratified the making of the calls. (*Id.*) Indeed, CarGuard has contracted with numerous agents to solicit the sale of its car warranties via telemarketing. (*Id.* ¶ 17.) CarGuard retains control over whether, and under what circumstances, it would accept customers—all car warranties are agreements between the consumers and CarGuard. (*Id.* ¶ 18.) CarGuard was also aware that its agents were placing unlawful telemarketing calls in violation of the TCPA. (*Id.* ¶ 19.) It has faced numerous lawsuits alleging similar violations of the TCPA, including lawsuits involving unsolicited, prerecorded calls. (*Id.*) It has also received numerous online complaints from

consumers relating to its telemarketing practices. (*Id.* ¶ 20.) The abuses were apparently so rampant that CarGuard sent a letter to its agents requiring them to cease placing outbound telemarketing calls effective July 1, 2021. (*Id.* ¶ 21.)

As explained below, and notwithstanding CarGuard's protestations, these facts are sufficient to state a claim against CarGuard for violating the TCPA, and the Court should deny the motion to dismiss accordingly.

### III. ARGUMENT

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) (citation omitted). "A court may not consider evidence outside the pleadings unless it converts the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and gives the nonmovant an opportunity to respond." *Rodrigues v. Ryan*, No. CV1408141PCTDGCESW, 2016 WL 1301654, at *4 (D. Ariz. Apr. 4, 2016), aff'd in part, 702 F. App'x 637 (9th Cir. 2017) (citations omitted). "A court may, however, consider documents attached to the complaint or incorporated by reference in the complaint, or matters of judicial notice". *Id.*

The Court should deny CarGuard's motion to dismiss. First, Plaintiff adequately sets forth facts to establish that CarGuard can be held directly liable for the calls at issue. Indeed, she alleges that CarGuard, itself, placed the offending calls. Second, Plaintiff has also alleged sufficient facts to hold CarGuard vicariously liable for the calls at issue. And, to the extent the Court finds that more facts are required, the Court should grant Plaintiff leave to file an amended complaint.

**A.   Workman pleads sufficient facts to show that CarGuard, itself, directly placed the offending calls.**

CarGuard starts by claiming that Workman "alleges in a conclusory manner that

CarGuard may have been responsible for the calls, but based on the alleged facts, it is clear a third party made the at-issue calls." (Mot. at 6.) CarGuard's argument ignores the allegations that the call was placed by CarGuard and its products were advertised on the call.

TCPA liability attaches when callers either "(1) directly make the call, or (2) have an agency relationship with the person who made the call." *Ewing v. Freedom Forever LLC*, No. 20-CV-880-JLS (AHG), 2021 WL 1087100, at *3 (S.D. Cal. Mar. 22, 2021) (citation omitted). Generally, allegations that a defendant placed a call or text message are sufficient to state a claim for direct liability. *See Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at *2 (S.D. Cal. May 12, 2022) (finding allegations that a defendant direct send text messages to advertise its services to be sufficient to state a TCPA claim based on a direct liability theory); *Whittaker v. Real Est. Heaven Int'l Inc.*, No. CV-21-08212-PCT-DJH, 2022 WL 1540168, at *4 (D. Ariz. May 16, 2022) (finding allegations that a defendant "sent the text messages" sufficient to assert a TCPA claim based on direct liability.); *Hoagland v. Axos Bank*, No. 20-CV-00807-BAS-DEB, 2021 WL 4924814, at *3 (S.D. Cal. Oct. 21, 2021) (finding the allegation that "[defendant] or its affiliate placed the call" was sufficient to state a TCPA claim based on direct liability).

Despite CarGuard's unsupported claims to the contrary, Plaintiff repeatedly alleged that CarGuard, itself, initiated the calls at issue to Workman and the class. (FAC ¶¶ 3, 14, 22, 31, 41-42.) Added to this, the complaint alleges that the calls solicited Plaintiff and the class members to purchase CarGuard's auto warranties. (*Id.* ¶¶ 17, 24, 26, 4.) In its motion, CarGuard claims that the caller "did not offer any CarGuard product to Plaintiff over the phone." (Mot. at 2.) That is simply not true. Rather, Plaintiff received the email containing the CarGuard car warranty application from Mr. Castro *during* the call. (FAC ¶ 27-28.) Castro was thus soliciting Workman to purchase the CarGuard warranty on the call. Taken together, these allegations easily state a claim against CarGuard based on direct liability. *See Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at

*2 (S.D. Cal. May 12, 2022) (finding that allegations that a text message included a link to the defendant's webinar plausibly alleges a TCPA claim based on direct liability); *Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 511 (D. Md. 2015) (holding that allegations that the plaintiff received a call from Defendant and then received an insurance quote for Defendant the next day sufficient to state a TCPA claim based on direct liability).

In its motion, CarGuard provides two assertions as to why the allegations supposedly don't support a direct liability claim. Neither is persuasive. First, it claims that it could not have placed the calls because the call "was transferred to Castro after a discussion with a different individual who is not alleged to have had any connection with CarGuard" and the complaint does not allege that "Castro worked for CarGuard". (Mot. at 6.) The fact that a call was transferred does not plausibly suggest that it was transferred from a third-party. Rather, companies regularly engage individuals to conduct separate roles throughout the telemarketing process, including individuals who locate interested leads and individuals who finalize sales. Notwithstanding this, CarGuard's argument ignores the fact that Plaintiff alleges that CarGuard, itself, placed the call. (FAC ¶¶ 3, 14, 22, 31, 41-42.) Hence, the only plausibly interpretation of the allegations is that Ina and Julian Castro are employees of CarGuard.

Second, in an attempt to counter the fact that its own application/contract was solicited on the call, CarGuard claims that its "plans are available to browse at https://carguardadmin.com/protection-plans/." (Mot. at 6.) This is also not true. The plan that Workman received is **not** available at CarGuard's website. Rather, the website contains single page "sample" applications, while Workman received a 24-page full application/contract. (*Compare* https://carguardadmin.com/protection-plans/, *with* FAC, Ex. A.) And even if the plan was available on the website, CarGuard is essentially asking the Court to insert allegations that the caller went to CarGuard's own website, downloaded the plan, and then initiated a telemarketing call on behalf of CarGuard. This is not proper at the pleading stage.

Finally, CarGuard relies on two inapposite cases. First, it claims that the court in

*Hudson v. Identity Intel. Grp., LLC*, No. EDCV22884DMGKKX, 2022 WL 18278385 (C.D. Cal. Dec. 9, 2022) dismissed a complaint "where the only connection between the defendant and the at-issue text was a link to a website selling the defendant's product". (Mot. at 7.) This is incomplete. Rather, the *Hudson* court dismissed the complaint because the text message included a link to a third-party website, which then contained a product link to the defendant's website. *See* 2022 WL 18278385, at *1, *3. The defendant's products were thus two steps removed. The *Hudson* court then compared the facts of its case to other lawsuits, in which direct liability was sufficiently alleged where the text messages, themselves, solicited the purchase of the defendants' products (*i.e.* a parallel situation to the CarGuard calls at issue here). *See id.* at *2 (citing *Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at *2 (S.D. Cal. May 12, 2022); *Abe v. Hyundai Motor Am., Inc.*, No. SA CV 19-699-JVS (ADSx), 2019 WL 6647938, at *4 (C.D. Cal. Aug. 27, 2019)).

The second case, *Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471 (N.D. Cal. Apr. 24, 2019), is likewise inapplicable. (Mot. at 7.) There, the complaint referred to three separate defendants as a single "Defendant" who "made the calls in question". *Naiman*, 2019 WL 1790471, at *3. Unlike the *Naiman* case, Workman does not lump separate defendants together. Additionally, she includes factual allegations regarding what transpired on the calls, including high pressure sales tactics to solicit the sale of a CarGuard car warranty. In short, neither *Naiman* nor *Hudson* support CarGuard's position.

Because Plaintiff alleges that CarGuard directly placed the calls at issue, it can be held directly liable. Further, because Rule 8 explicitly "allows parties to plead inconsistent factual allegations in the alternative" and the pleading is sufficient is either theory is sufficient, the Court's inquiry can end. *See Rex Inv. Co. Ltd v. S.M.E., Inc.*, No. 15-CV-02607-H-JMA, 2016 WL 4507463, at *6 (S.D. Cal. Aug. 29, 2016); *see also* Fed. R. Civ. P. 8(d). Indeed, Workman's alternative vicarious liability allegations do not provide "a basis for dismissal of the claim." *Id.*; *see also Cellars v. Pac. Coast Packaging, Inc.*, 189

7

F.R.D. 575, 578 (N.D. Cal. 1999).

**B.   Even if CarGuard can escape direct liability, the Complaint sets forth facts that, if proven, show that CarGuard can be held vicariously liable for the calls at issue.**

CarGuard's second argument—that the Amended Complaint doesn't set forth sufficient facts to show that CarGuard can be held vicariously liable for the calls at issue (mot. at 7-14)—falls apart. Although CarGuard claims that Workman did not allege that the callers "worked for CarGuard, claimed to work for CarGuard, or worked on behalf of CarGuard" (*id.* at 10), in reality the opposite is true. The pleadings allege significant facts that plausibly suggest that CarGuard can be held liable for the calls at issue.

"Under the TCPA, a defendant may be held vicariously liable for calls it does not directly initiate 'under federal common law principles of agency.'" *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-05665-YGR, 2015 WL 1254681, at *3 (N.D. Cal. Mar. 18, 2015). Thus, an agency relationship can be established by actual authority, apparent authority, and/or ratification. *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019). "Whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship." *Id.* (citing Restatement (Third) of Agency, §§1.02.).

As explained next, Plaintiff alleges facts to plausibly suggest the existence of an agency relationship under each theory.

**(a)   The Complaint pleads facts to plausibly show that CarGuard exercised actual authority over the callers.**

Agency is a "relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "An essential element of agency is the principal's right to control the agent's actions." *Id*, cmt. f(1) (2006). In particular, "[t]he power to give interim instructions distinguishes principals in agency relationships from

8

those who contract to receive services provided by persons who are not agents." *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CVF03-5412 AWI LJO, 2008 WL 2220396, at *11 (E.D. Cal. May 27, 2008) (quoting Restatement (Third) of Agency, § 1.01 cmt. f(1) (2005)).

In this case, the allegations support a plausible inference that CarGuard had actual authority over the caller. First, Plaintiff pleads that CarGuard was fully aware that unsolicited telemarketing calls were being made to consumers. (FAC ¶ 15.) The complaint further alleges that Defendant "knew about the calls, received the benefits of the calls," and "directed that the calls be made." (*Id.* ¶¶ 15- 16.) Indeed, CarGuard contracts with third-party agents to "solicit the sale of its car warranties via telemarketing." (*Id.* ¶ 17.) Even after the calls were placed, CarGuard retained control over whether it would accept customers and all contracts would be between the consumers and CarGuard. (*Id.* ¶ 18.) As further evidence that it retains substantial control over its agents' telemarketing activities, CarGuard instructed its agents to stop placing outbound telemarketing calls on July 1, 2021 (*id.* ¶ 21)—the ability to control the operations of a third-party is a telltale sign of actual authority. *See Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 3709854, at *5 (D. Ariz. Aug. 20, 2021) ("a fundamental tenet of an agency relationship is that the principal had 'the right to substantially control its [agent's] activities.'" (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017))).

Together, the allegations plausibly state a claim based on actual authority.

### (b) The Complaint also plausibly alleges that the callers had apparent authority to act as CarGuard's agent.

Apparent authority arises where a principal's "manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." *Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*, No. 219CV02444ODWASX, 2019 WL 6135030, at *5 (C.D. Cal. Nov. 19, 2019). "Apparent

authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [principal] on which [the third party] reasonably relied." *Hossfeld v. DIRECTV, LLC*, No. 222CV05339JLSMAA, 2023 WL 3549742, at *5 (C.D. Cal. Mar. 31, 2023) (quoting *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)). Such statements may include "direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates." *Id.* (quoting *N.L.R.B. v. Donkin's Inn, Inc.*, 532 F.2d 138, 141 (9th Cir. 1976)).

The FCC has set forth examples of how apparent authority claims can be established within the TCPA context:

> For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information– should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of Cal., Ill.. N.C., & Ohio for Declaratory Ruling Concerning the Tel.*

*Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6592 (2013).

The complaint plausibly alleges that CarGuard can be held liable under an apparent authority theory. Indeed, the caller utilized both CarGuard's name and its trademarks/logos to solicit clients. The caller also had access to information that would normally be within CarGuard's exclusive control (*i.e.* the vehicle service application or contract). (*See* FAC, Ex. A.). The contract bears only CarGuard's name and logo. (*Id.*) No reasonable recipient of this information would believe that they were communicating with any person other than CarGuard or a direct agent acting on behalf CarGuard. *See McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471, at *2 (9th Cir. Apr. 5, 2022) (explaining that apparent authority does not exist where "[t]here is no basis to find that the person answering a Prospects call would reasonably believe that Prospects was acting on behalf of Royal Seas. . ."). Put simply, in addition to traditional apparent authority principals, the instant facts are aligned with the FCC's illustrations of apparent authority liability as well.

Accordingly, while Workman is not (at the pleading stage) privy to the communications and instructions that CarGuard gave to its agents, she has alleged facts to plausibly suggest that CarGuard granted the caller "permission" to "perform acts and conduct negotiations under circumstances which create in him a reputation of authority in the area which the agent acts and negotiates." The motion should therefore be denied.

**(c)     Lastly, CarGuard plausibly ratified the conduct of the callers.**

Finally, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Henderson*, 918 F.3d at 1073. Notably, "ratification creates consequences of actual authority, including, in some circumstances, creating an agency relationship when none existed before." *Id.* There are two ways that a principal may ratify another's acts. First, a principal may knowingly accept the benefits. *Id.* To establish actual knowledge, "there must be 'an objectively or externally observable indication ... that the principal has exercised choice and has consented' to the acts of the purported agent." *Id.* Second, "a principal can ratify the acts of a third party is

through 'willful ignorance.'" *Id.* Under this theory, "the principal may not know the material facts, but has 'ratified with awareness that such knowledge was lacking.'" *Id.*

Applying these principals to TCPA cases, courts find that complaints plausibly allege an agency theory based on ratification where the complaint includes allegations that the calls were made with the defendant's "knowledge and assistance" or their approval or participation. *See Moser v. Health Ins. Innovations, Inc.*, No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112, at *7 (S.D. Cal. Jan. 5, 2018) (finding that allegations that a third party made the calls with defendant's "full knowledge and assistance" sufficient to state a claim under the TCPA); *Hoagland v. Axos Bank*, No. 20-CV-00807-BAS-DEB, 2021 WL 4924814, at *3 (S.D. Cal. Oct. 21, 2021) (finding allegations that a defendant "approved," "participated," and "orchestrat[ed]" the phone calls were sufficient to state a claim under vicarious liability theory); *Hamilton v. Moussa*, No. CV1908182CJCAFMX, 2020 WL 8993127, at *3 (C.D. Cal. Apr. 30, 2020).

Here, Plaintiff sufficiently alleges that CarGuard ratified the calls placed in this case. CarGuard contracts with third-party agents to "solicit the sale of its car warranties via telemarketing." (FAC ¶ 17.) Plaintiff alleged that CarGuard was fully aware that unsolicited telemarketing calls were being made to consumers. (FAC ¶ 15.) CarGuard "knew about the calls, received the benefits of the calls," and "directed that the calls be made." (*Id.* ¶¶ 15-16.) While Workman is not privy to private complaints submitted to CarGuard, she has alleged the receipt of numerous online complaints from consumers regarding telemarketing abuses. (*Id.* ¶ 20.) As further evidence of CarGuard's knowledge of the unlawful calls, Plaintiff alleges that it has faced numerous lawsuits and required its agents to cease placing outbound telemarketing calls on July 1, 2021, as a result of the telemarketing abuses. (*Id.* ¶ 21.) Additionally, CarGuard retained control over what circumstances that it would accept customers and the agreements were between the consumer and CarGuard. (*Id.* ¶ 18.) Together, the allegations demonstrate that CarGuard either knew or should have known of the telemarketing abuses inflicted by the third-parties

that it hired to place outbound telemarketing calls, and it accepted the benefits of those unlawful calls regardless.

CarGuard ignores these allegations, and instead asserts that Plaintiff "fails to allege that she or any class member purchased a CarGuard contract as a result of these illegal calls" and therefore CarGuard did not "knowingly accept[] any *benefits* of any illegal calls." (Mot. at 14.) CarGuard is mistaken. The "benefits" received by CarGuard by virtue of calls placed by a telemarketer on its behalf are not limited only to successful new sales—if so, CarGuard could only ratify unlawful TCPA calls made on its behalf by a telemarketer where the customer actually consummated a purchase from CarGuard. But CarGuard also gains the *potential* for new customers—a benefit in and of itself—through the illegal calls. If CarGuard knows the calls are being made unlawfully but does nothing to stop the telemarketer, because with each call the chance of selling car warranties increases, then under general ratification principles the principal has knowingly accepted the benefits produced by the calls.

The *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.* case is instructive. No. 1:13-MD-2493, 2019 WL 7835630, at *13 (N.D.W. Va. Apr. 3, 2019). There, the court rejected the same argument raised by CarGuard here and explained:

> Monitronics contends that the Court cannot find Monitronics vicariously liable on a ratification theory because plaintiffs did not purchase Monitronics' alarm monitoring services. The court in *Aranda* rejected an identical argument, finding that an issue of fact existed even though the named plaintiffs did not purchase anything because the evidence showed that the defendants were aware of unlawful telemarketing calls but "continued to accept business flowing" from those calls. *See Aranda*, 179 F.Supp.3d at 833. The bottom line is that Monitronics accepted the benefits of calls which violated the TCPA. The plaintiffs received the illegal calls. No purchase is necessary.

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 1:13-MD-2493, 2019 WL 7835630, at *13 (N.D.W. Va. Apr. 3, 2019) (citing *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016)).

13

In the end, because CarGuard accepted the benefits of the caller's unlawful telemarketing activity, it can be held liable under a ratification theory. The motion should therefore be denied.

### C. To The Extent The Court Finds That The Complaint Is Deficient, Plaintiff Should Be Granted Leave To Amend.

"[L]eave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1-52 (9th Cir. 2003). To the extent the Court determines that the FAC should be dismissed, Plaintiff respectfully requests leave to amend to cure any defects.

## IV. CONCLUSION

CarGuard's arguments for dismissal fall apart. Plaintiff Workman alleges sufficient facts to demonstrate that CarGuard placed the offending calls and can be held directly liable. Furthermore, Workman alleges additional facts that, if proven true, are sufficient to state a claim against CarGuard based on vicarious liability. As such, the Court should deny Defendant's motion and order such additional relief as it may deem necessary and just.

Dated: September 22, 2023

**CANDY WORKMAN**, individually and on behalf of all others similarly situated,

By: */s/ Taylor T. Smith*
One of Plaintiff's Attorneys

Penny L. Koepke
pkoepke@hoalaw.biz
MAXWELL & MORGAN, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 E. Mexico Ave., Suite 300

Denver, CO 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on September 22, 2023.

<u>/s/ Taylor T. Smith</u>